**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Celestino Ixtabalan Saj,<br>Petitioner<br>-vs-<br>Eric Rokosky, et al.,<br>Respondents. | CV-26-6825-PHX-JFM<br><br>**ORDER** |

Under consideration is Petitioner's Petition for Writ of Habeas Corpus filed September 24, 2026 (Doc. 1).

**<u>Background</u>** – Petitioner is a native and citizen of Guatemala who entered the United States at some unknown date and location, but without inspection, admission or parole. In the interim, Petitioner has married a U.S. citizen, and has two U.S. citizen children.

On November 7, 2025 Petitioner was arrested by state officials following a traffic accident, on charges of: (1) failure to stay at the scene of an accident that resulted in death or serious injury; (2) aggravated assault; (3) trafficking in stolen property; and misdemeanor endangerment. Petitioner was interviewed by immigration officials at the time of booking, but was not detained by immigration officials and instead remained in state custody. An immigration detainer hold was given to state officials.

The prosecutor declined to prosecute on the trafficking charge. Petitioner was ultimately convicted on August 7, 2026 on the single charge of aggravated assault. After his sentencing hearing on September 9, 2026, after notice by state officials to immigration officials, Petitioner was released by state officials to the custody of the immigration officials. On September 10, 2026 Petitioner was charged with being inadmissible under INA §§ 212(a)(6)(A)(i) (present, unadmitted or paroled alien) and 212(a)(7)(A)(i)(I)

(seeking admission without papers). *See* 8 U.S.C. § 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I). A hearing was originally set for September 25, 2026, but removal proceedings were reported to be ongoing as of October 6, 2026. Petitioner has remained detained but has apparently not been provided a bond hearing.

**Briefs** – Petitioner's *pro se* Petition (which is largely a form Petition with very few specific supporting facts asserted) argues: (1) his Fifth Amendment Due Process rights and the Administrative Procedures Act were violated by his warrantless arrest with no notice of the reasons therefor; and (2) his Fifth Amendment Due Process rights and the Administrative Procedures Act because Petitioner had on November 8, 2026 been encountered and interviewed by immigration officials, but not detained, when processing out of police custody, and thus he was entitled to a pre-deprivation hearing before his recent arrest. Petitioner seeks, *inter alia*, release and mandates for pre-deprivation hearings for any future detention.

Respondents' Response (Doc. 7) argues that Petitioner is properly mandatorily detained pursuant to 8 U.S.C. § 1226(c) on the basis that Petitioner had been "arrested for" a "crime that results in death or serious bodily injury to another person." (*Id.* at 2 (quoting 8 U.S.C. § 1226(c)(i) and (ii)).)

Petitioner has not replied, and his time to do so expired on October 23, 2026.

**Arrest Issues** – Petitioner asserts his arrest (and purported re-arrest) was unlawful and unconstitutional. However, the purpose of habeas is not to remedy every wrong suffered, but to determine the legality of present custody. In *Alvarez-Mendez v. Stock*, 941 F.2d 956 (9th Cir. 1991) the Ninth Circuit addressed a habeas petition by an immigration detainee who asserted that he had been arrested without lawful authority because the statute relied on had been adopted in the interim and was not retroactive. The Court found the statute made his present detention legal. As to the arrest, the circuit court opined:

> Although the new section 1226(e) does not retroactively authorize any of the Attorney General's acts accomplished prior to the amendment, we are concerned here only with the legality of Alvarez–Mendez's present detention. Because this case involves a petition for the writ of habeas corpus, and not a claim for damages for illegal

> detention, the only issue before us is whether Alvarez–Mendez's detention is illegal today. Therefore, even if his detention was illegal prior to the 1990 Act, if that Act gives the Attorney General the authority to hold Alvarez–Mendez today, his present custody is not illegal and habeas corpus is not available.

941 F.2d at 960.

Indeed, the courts have long held that "[a] writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and, if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." *Nishimura Ekiu v. United States*, 142 U.S. 651, 662 (1892). *See also Streeter v. Craven*, 418 F.2d 273, 274 (9th Cir. 1969) ("The district court properly concluded that defects in an arrest are not cognizable in habeas corpus."); and *Arias v. Rogers*, 676 F.2d 1139, 1143 (7th Cir. 1982) ("To give a person who has been illegally arrested total immunity from either criminal punishment or deportation is an excessive sanction for the illegal arrest.").

**Current Detention** – In *Demore v. Kim*, 538 U.S. 510, 518 (2003), the Supreme Court concluded that due process was not violated by the then appliable version of 8 U.S.C. § 1226(c) which mandated detention of certain aliens on the basis of their "commission" of various offense, their conviction and "sentence" for more than one year on certain offenses. In 2025, Congress adopted the Laken Riley Act, Pub. L. no. 119-1, 139 Stat. 3 (2025), which expanded the categories of aliens who can be mandatorily detained under 8 U.S.C. § 1226(c). It now includes not only aliens shown to have committed or been convicted and sentenced for criminal offenses, but who simply:

> is **charged with, is arrested for**, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime **that results in death or serious bodily injury to another person**.

8 U.S.C. § 1226(c)(1)(E)(ii) (2025) (emphasis added).

Here, Petitioner's only conviction and sentence was for an aggravated assault, a Class 3 felony, non-dangerous, and non-repetitive, occurring on October 12, 2025.

(Response, Doc. 7, Exh. A at 3.) Nothing in the record shows that this conviction was for a crime that met the criteria in § 1226(c).

Aggravated assault is proscribed by Ariz. Rev. Stat. § 13-1204. That statute first requires an assault, which is defined as:

> 1. Intentionally, knowingly or recklessly causing any physical injury to another person; or
> 2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or
> 3. Knowingly touching another person with the intent to injure, insult or provoke such person.

Ariz. Rev. Stat. § 13-1203(A). None of these require death or serious bodily injury.

Section 13-1204 includes a laundry list of offenses that qualify as a Class 3 felony for aggravated assault. *See* Ariz. Rev. Stat. § 13-1204(F), (G), (H), and (I)(2). While some these might qualify under § 1226(c), not all do. For example, subsection (F) references offenses that would not, *e.g.*: (A)(2) (use of a deadly weapon or dangerous instrument); (A)(9)(a) (attempt to control firearm); (A)(11) (use of a simulated deadly weapon).

Thus, to support application of § 1226(c) to Petitioner, Respondents must rely on Petitioner being "charged with" or "arrested for" a qualifying offense. But the record proffers no evidence what Petitioner was ultimately charged for, only what he was arrested for, and what he was convicted of.

Thus, Respondents are left to relying on Petitioner having been arrested for failure to stay with death or injury, in violation of Ariz. Rev. Stat. § 28-661(A)(2). But such a crime does not require any showing that the defendant committed a crime that "results in death or serious bodily injury." Indeed, a completely innocent victim in a vehicle accident can be guilty under this section. In fact, the crime under this section is arguably not complete until after the death or injury has already been caused. Thus, it cannot be this charge was one which "resulted" in death or serious injury.

Nor can Respondents attempt to leverage Petitioner's assault charge into one resulting in death or serious physical injury. There is nothing in the record to show that the aggravated assault charged (o for which Petitioner was convicted) was one which

resulted in the death or injury. Indeed, on this record, the assault could have occurred at a completely separate time or place as the accident referenced in the fleeing charge, or could have resulted in no injury. For, example, following the traffic accident, Petitioner may have threatened a driver with a weapon before fleeing, but such an offense would not necessarily have actually resulted in death or serious injury.

Petitioner was arrested for trafficking in stolen property in the first degree. Ariz. Rev. Stat. § 13-2307(B) establishes such an offence. While the Arizona statute does not require the defendant have committed the theft, it does require that he knowingly "initiates, organizes, plans, finances, directs, manages or supervises the theft." Such actions as an accessory before the fact qualifies as theft for immigration purposes. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 190 (2007) (determining removability for theft under 8 U.S.C. § 1227(a)).

Here, however, the prosecutor apparently declined to press charges. Thus Respondents must rely upon the "arrested for" standard under § 1226(c).

The Court finds that, under the rubric of *Mathews v. Eldridge*, 424 U.S. 319 (1976) (balancing individual's liberty interest, risk of erroneous deprivation, and government's interests) Petitioner has a due process right to a hearing on the basis for his current detention, including findings on whether there is evidence (beyond mere accusation) to give probable cause to believe that he has indeed committed a crime covered by § 1226(c). While ordinarily, the Court would be inclined to conclude that a routine hearing under § 1226(a), with the burden of proof on Petitioner, would be sufficient. But here, the founding of the detention of Petitioner on the basis of an arrest implicates the right to be presumed innocent of criminal offenses until they are proven beyond a reasonable doubt.

Here, the Petitioner has two significant constitutional interests deserving of protection: the first is a liberty interest formed by his entry and release on bond. Petitioner has already been deemed by DHS to be of a low enough flight and danger risk to be released. He has spent some six months in country. Moreover, Petitioner has a right to be presumed innocent of crimes until proven guilty beyond a reasonable doubt. At a

minimum, he should not be detained for civil reasons more readily than he would be held for criminal prosecution, *i.e.* upon a finding of probable cause with the burden of proof on the government. *See Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993 (N.D. Cal. 2018) (detention of alien based solely on arrest, without probative and specific evidence to show commission of the crime, violation of due process).

Moreover, here there is a significant risk of erroneous deprivation. Unwarranted criminal arrests are generally constitutional only if an officer has found probable cause. But, "[w]hen a person is arrested without the benefit of a warrant supported by probable cause, the Fourth Amendment requires a judicial determination of probable cause to occur 'promptly' after their arrest." *Jones v. City of Santa Monica*, 382 F.3d 1052, 1055 (9th Cir. 2004). Here there is nothing to show that such a judicial finding of probable cause was ever made on a § 1226(c) offense.

Finally, the Government's interest in detaining Petitioner without an opportunity for such a determination is limited. *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

Thus, while § 1226(c) may permit detention based merely on an arrest, the Constitution does not. Accordingly, the Court will direct the provision of a custody determination.

This is not the relief Petitioner seeks. But the form of relief in a habeas proceeding is within the discretion of the Court.

> "[The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." Federal courts have a fair amount of flexibility in fashioning specific habeas relief. "A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as law and justice require and is not required to order petitioner's immediate release from physical custody."

*Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) (citations omitted).

Nothing in the Petition suggests a bond hearing is not an appropriate remedy, and it is the remedy most closely related to the illegality found.

**IT IS THEREFORE ORDERED:**

(A) Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED IN PART** as specified herein.

(B) Within **seven days** of the filing of this Order, Respondents must provide Petitioner a **BOND DETERMINATION HEARING** pursuant to 8 U.S.C. § 1226(a) or release Petitioner from custody.

(C) In such bond hearing, notwithstanding 8 U.S.C. § 1226(c), an **ARREST OR PROSECUTION OF PETITIONER** may not be relied upon to deny bond absent either: (1) evidence of a prior neutral determination of probable cause (*i.e.* by a grand jury, or a judicial officer) to believe Petitioner committed a qualifying offense; or (2) the government’s provision of probative and specific evidence to permit the immigration judge to conclude there is probable cause to believe Petitioner committed the qualifying offense.

(D) Petitioner —including any counsel—must be given at least two days’ written notice of the bond hearing.

(E) If Petitioner requests a continuance of such bond hearing from the Immigration Court, Respondents must promptly notify the Court and provide the continued date for the bond hearing.

(F) Respondents must provide a **NOTICE OF COMPLIANCE** within **three days** of releasing Petitioner or providing Petitioner a bond hearing, specifying the results of the hearing or particulars of the release.

(G) Any pending motions are **DENIED AS MOOT**.

(H) The Clerk of Court must enter **JUDGMENT** in Petitioner’s favor and **CLOSE** this case.

Dated: November 5, 2026

26-6825-001o Order 26 11 05 on Petition for Writ of Habeas Corpus.docx

James F. Metcalf
United States Magistrate Judge